### E. H. CHAMBERLAIN V. THE STATE.

No. 15527.   Delivered February 8, 1933.
Rehearing Denied March 22, 1933.
Reported in 58 S. W. (2d) 93.

224

The opinion states the case.

H. T. Miller, of Moody, and A. L. Curtis, of Belton, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for arson; punishment, two years in the penitentiary.

The only question raised is the sufficiency of the testimony. Without naming the witnesses or quoting their testimony, it is enough to say that about 4 o'clock p. m., in a vacant apartment of a house belonging to appellant, which was insured, a fire broke out and partially destroyed the house. The house was bought some seven years before for $2,625.00. At the time of the fire, it and its contents were insured for $4,500.00. No one testified to the value of the house or contents at the time of the fire, save appellant, who said he had fixed the house up and spent considerable money on it. There were two apartments in said house; one vacant, one occupied. The fire started in the vacant apartment, and, according to a number of witnesses, in the attic over a bathroom or pantry. A visitor at the house at the time swore that about thirty minutes before the fire broke out she saw appellant and one Burns leave said house in a green car. She saw the car parked first, then heard some one in the vacant apartment up over a room in the ceiling of which was a trap door opening into the attic. This witness said she heard this door slide to one side while the men were in there. She was at the time in the kitchen of the other apartment which was occupied by a family by the name of Wells. She said there was only a wall between her and the room where the men slid back the door over this hole in the ceiling. Mrs. Wells testified that she saw the car of appellant parked near the house, and heard men in the house right after the car drove up. She said there was an attic over the bathroom and she heard the men up there. About ten or fifteen minutes after the men left she smelled something like tar burning, and presently discovered the house was on fire. She testified the fire originated over the bathroom up in the attic. Prior to the coming of the men, the front and back doors of the vacant apartment were unlocked. Mrs. Wells testified that after the men left she tried the back door of said apartment and it was locked. Her little daughter, eleven years old, testified she saw one of the men lock the front door of the apartment when they

left. The chief of the fire department said they got a call to this fire about 4:10 p. m., and when they got there the whole roof was on fire. Looking at the attic over the bathroom and pantry, he said it looked like the fire started up there. He testified there were a lot of rags and junk in this attic, and he perceived the odor of oil and saw a lot of smoke. Some of the rags in the attic were burned and some not. He said the fire seemed to have started in a closet with a scuttle hole going into the attic. Another fireman corroborated the fact of the rear door of the vacant apartment being fastened; also as to the quantity of burned rubbish in the attic. The little daughter of Mrs. Wells testified that she saw two men in a green car, like the one driven by appellant's wife when she came to collect the rent, come to the house a little while before the fire. One of the men had a big tow sack which he carried in the house. When they left neither man had the sack. She said one of them locked the front door before they went away. She did not know the men, but said one of them had burnsides. A witness testified that the man with appellant at the house that afternoon was a Mr. Burns. Another witness testified that Burns at said time wore burnsides.

Appellant swore to an alibi, but admitted he was at said house about 1 o'clock p. m. He supported his alibi by a number of witnesses whose testimony we will not quote, since reconciliation of conflicts in testimony is for the jury, and they have expressed their judgment in this case. We would not be allowed to set aside the judgment unless same was without support in testimony, or else the testimony of guilt be so weak as to lead us to conclude the verdict the result of prejudice, or some supportable reason indicating that the accused had not been given a fair trial. There is not a bill of exception in this record, nor any complaint of the charge of the court. Appellant filed an application for a continuance because of the absence of his wife, but if same was ever presented to the court the record fails to disclose it. The affidavit of the wife was attached to the motion for new trial, and shows to be but cumulative of other alibi evidence, and, further, the order overruling said motion recites that the court heard evidence, and no evidence is preserved or brought forward either in a bill of exception or statement of facts as that heard upon the hearing of said motion. While the case was submitted to the jury under the law of circumstantial evidence, it was so submitted in a manner acceptable to appellant, and there seem to be enough facts to justify the jury's conclusion of guilt.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—A careful review of the evidence heard upon the trial has been made in the light of the appellant's motion for rehearing, and the conclusion has been reached that this court would not be authorized to overturn the verdict of the jury.

The motion for rehearing is overruled.

*Overruled.*